UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.

Oswaldo Quiroz-Mendieta, No. 1, and
Juan Luis Farias-Mendoza, No. 2,

    Defendants.

Criminal No. 07-201 (MJD/FLN)

**REPORT AND RECOMMENDATION**

———————————————————————

Jeffrey M. Bryan and Michael L. Cheever, Assistant United States Attorneys, for the Government.
Daniel L. Gerdts for Defendant Quiroz-Mendieta.
Robert M. Paule for Defendant Juan Luis Farias-Mendoza.

———————————————————————

**THIS MATTER** came before the undersigned United States Magistrate Judge on July 26, 2007, on Defendant Quiroz-Mendieta's motion to suppress all evidence obtained from unlawful searches and seizures [#45], Defendant Farias-Mendoza's motion to dismiss count 6 of the indictment [#28], Defendant Farias-Mendoza's motion to suppress physical evidence [#37] and Defendant Farias-Mendoza's motion to suppress evidence obtained as a result of search and seizure [#38].[1]  At the hearing, the Court received four exhibits.  Government's exhibit number one is an application for search warrant with supporting affidavit, search warrant, and search warrant return for a residence on 5th Avenue South in Minneapolis,

———

[1] Co-defendants Delgado-Meza and Arroyo-Pulido participated at the hearing on these matters, but they do not have any motions currently pending before the Court.

Minnesota. Government's exhibit number two is an application for search warrant with supporting affidavit, search warrant, and search warrant return for a rental apartment on Oakdale Avenue in West St. Paul, Minnesota. Government's exhibit number three is the residential lease document for the Oakdale Avenue apartment. Government's exhibit number four is an application for search warrant with supporting affidavit, search warrant, and search warrant return for a residence on Thomas Avenue North in Minneapolis, Minnesota. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that the Defendants' motions be denied.

## I.  FINDINGS OF FACT

Minneapolis Police Officer Jose Gomez testified at the hearing on this matter. Officer Gomez is employed as a police officer with the Minneapolis Police Department. Officer Gomez is currently assigned to the narcotics unit. Officer Gomez has been with the narcotics unit for 13 years. Officer Gomez is the co-case agent for the investigation that led to the charges against the Defendants in this case.

On May 11, 2007, Officer Randall Olson of the Minneapolis Police Department applied to the Hennepin County District Court for a warrant to search a residence on 5th Avenue South in Minneapolis, Minnesota, for narcotics and items related to the sale of narcotics. (Ex. 1.) On May 14, 2007, Officer Olson applied to the Dakota County District Court for a warrant to search a rental apartment on Oakdale Avenue in West St. Paul, Minnesota, for narcotics and items related to the sale of narcotics. (Ex. 2.) Officer Olson submitted the same affidavit to establish probable cause for the issuance of both warrants. (Ex. 1; Ex. 2.)

The affidavit states that through a confidential informant (hereinafter referred to as "CI"), Officer

Olson and Officer Gomez received information concerning a "Mexican based marijuana drug trafficking organization" distributing marijuana in the Twin Cities area. (Ex. 1, 1-2; Ex. 2, 1-2.) The affidavit states that the CI provided the phone number that "Pelon", later identified as Defendant Quiroz-Mendieta, utilized in the distribution of marijuana. (Ex. 1, 1-2; Ex. 2, 1-2.) According the affidavit, Officers Olson and Gomez had the CI conduct a series of controlled purchases of marijuana from Defendant Quiroz-Mendieta. (Ex. 1, 1-2; Ex. 2, 1-2.)

The affidavit states that, on May 3, 2007, the CI contacted Defendant Quiroz-Mendieta to purchase a quantity of marijauna. (Ex. 1, 1-2; Ex. 2, 1-2.) The affidavit describes the CI meeting and purchasing marijuana from Defendant Quiroz-Mendieta and another Hispanic male. (Ex. 1, 1-2; Ex. 2, 1-2.) The affidavit also describes Defendant Quiroz-Mendieta and the Hispanic male immediately leaving the purchase and driving a Dodge Cirrus back to the 5th Avenue residence. (Ex. 1, 1-2; Ex. 2, 1-2.) The affidavit states that surveillance was set-up on the 5th Avenue residence and Defendant Quiroz-Mendieta left the residence on May 4, 2007, and drove away in a Toyota 4-Runner. (Ex. 1, 1-2; Ex. 2, 1-2.)

According to the affidavit, on May 9, 2007, the CI arranged for another controlled purchase of marijuana from Defendant Quiroz-Mendieta.(Ex. 1, 1-2; Ex. 2, 1-2.) The affidavit states that after the CI made contact to arrange the purchase, Defendant Quiroz-Mendieta left the 5th Avenue residence in the Toyota 4-Runner, drove directly to the CI and exchanged a quantity of marijuana for cash. (Ex. 1, 1-2; Ex. 2, 1-2.) During this transaction, the CI asked to obtain some marijuana on credit. (Ex. 1, 1-2; Ex. 2, 1-2.) According to the affidavit, Defendant Quiroz-Mendieta agreed to sell the CI marijuana on credit, but he stated that he would have to meet with his source to get additional marijuana. (Ex. 1, 1-2; Ex. 2, 1-2.) The affidavit states that officers observed Defendant Quiroz-Mendieta drive back to the 5th Avenue

residence and switch vehicles to a red pick-up truck. (Ex. 1, 1-2; Ex. 2, 1-2.) According to the affidavit, Defendant Quiroz-Mendieta drove the red pickup truck to an automotive shop on Lake Street, received a Target bag containing marijuana from Armando Ybarra and Fabian Luna Hernandez, left the automotive shop, drove to the CI, and handed the Target bag the CI. (Ex. 1, 1-2; Ex. 2, 1-2.)

The affidavit states that surveillance was maintained on Ybarra and Hernandez after their exchange with Defendant Quiroz-Mendieta. (Ex. 1, 1-2; Ex. 2, 1-2.) The affidavit states that Ybarra and Hernandez led officers back to the Oakdale Avenue apartment. (Ex. 1, 1-2; Ex. 2, 1-2.) According to the affidavit, Officer Olson met with the property manager for the apartment complex and confirmed Ybarra's apartment number. (Ex. 1, 1-2; Ex. 2, 1-2.) The affidavit states that a drug certified K-9 was brought in to conduct a sniff at the Oakdale Avenue apartment complex and the K-9 alerted for the presence of narcotics at the unit assigned to Ybarra. (Ex. 1, 1-2 - 1-3; Ex. 2, 1-2 - 1-3.)

On May 11, 2007, Officer Randall Olson of the Minneapolis Police Department applied to the Hennepin County District Court for a warrant to search a residence on Thomas Avenue North in Minneapolis, Minnesota, for narcotics and items related to the sale of narcotics. (Ex. 4.) Officer Olson submitted the same affidavit used to establish probable cause for the issuance of previous warrants with an additional paragraph describing the events of May 14, 2007. (Ex.4, 1-3.)

The additional paragraph states that the CI ordered a quantity of marijuana from Defendant Quiroz-Mendieta on May 14, 2007.[2] (Ex.4, 1-3.) The affidavit states that Defendant Quiroz-Mendieta indicated

---

[2] Officer Gomez testified that the CI ordered a large quantity of marijuana for the purpose of discovering whether a "stash house" was being utilized. A stash house is a location outside of the narcotic supplier's residence where marijuana is stored.

4

that he would call the CI when he had the marijuana. (Ex. 4, 1-3.) Surveillance was maintained on Defendant Quiroz-Mendieta and he was observed driving the Toyota 4-Runner and meeting with with two Hispanic males, later identified as Defendants Farias-Mendoza and Delgado-Meza,[3] at a location in South Minneapolis (Ex. 4, 1-3.) The affidavit states that Defendant Quiroz-Mendieta left the meeting location in the Toyota 4-Runner and Defendants Farias-Mendoza and Delgado-Meza followed in the same red pick-up truck used by Defendant Quiroz-Mendoza on May 9, 2007. (Ex. 4, 1-3.) The affidavit describes the vehicles following each other and pulling over at a location in North Minneapolis where the passenger from the red pick-up truck moved to the passenger seat of the Toyota 4-Runner, then the vehicles proceeded to the Thomas Avenue residence. (Ex. 4, 1-3.) The affidavits states that all three men entered the Thomas Avenue residence and emerged after approximately ten minutes with Defendant Quiroz-Mendieta carrying a box. (Ex. 4, 1-3.) Defendant Quiroz-Mendieta placed the box in the Toyota 4-Runner and drove away, while Defendants Farias-Mendoza and Delgado-Meza drove away in the red pick-up truck. (Ex.4, 1-3.) The affidavit states that as the vehicles drove away, Defendant Quiroz-Mendieta informed the CI, by phone, that he had the marijuana and was ready to met for the drug transaction. (Ex. 4, 1-3.) According to the affidavit, traffic stops were executed on both vehicles and the three Defendants were placed under arrest. The affidavit states that a large amount of marijuana was recovered from Defendant Quiroz-Mendieta and a large amount of United States currency was recovered from Defendant Delgado-Meza. (Ex. 4, 1-3.)

---

[3]Officer Gomez testified that names Farias-Mendoza and Delgado-Meza were switched in the preparation of the affidavit. There is no evidence to suggest that this error was deliberate. Officer Gomez testified and the Court finds that this error was an honest mistake by the Officer Olson.

Based upon these affidavits, search warrants were issued for all three properties. (Ex. 1, 2-1; Ex. 2, 2-1; Ex.4, 2-1.) The search warrants were executed on May 14, 2007, after the Defendants had been placed under arrest. (Ex. 1; Ex. 2; Ex. 4.) During the search of the 5th Avenue residence, Officers seized money gram receipts, a cell phone, and identification cares in various names. (Ex. 1.) During the search of the Oakdale Avenue apartment, Officers seized, among other things, suspected marijuana, a scale, various papers believed to contain "drug notes", and $900.00. (Ex. 2.) During the search of the Thomas Avenue residence, Officers seized suspected marijuana, scales, and drug packaging material. (Ex. 4.)

## II.   CONCLUSIONS OF LAW

**A.   The Indictment Cannot Be Dismissed for a Lack of Probable Cause.**

Defendant Farias-Mendoza moves to dismiss Count 6 of the Indictment for a lack of probable cause in the indictment. "It has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury." *United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999) (citing *Costello v. United States*, 350 U.S. 359, 363-64 (1956). Therefore, Defendant Farias-Mendoza's motion to dismiss count 6 of the indictment [#28] must be denied.

**B.   The Search Warrants and the Arrest of the Defendants Are Supported by Probable Cause.**

The Defendants challenge searches and seizures conducted pursuant to the search warrants based upon a lack of probable cause for their issuance of the warrants. The Defendants also challenge the arrests of the Defendants and searches incident to those arrests as not supported by probable cause. The Defendants move to suppress all of evidence obtained during these searches and arrests. The Defendants'

6

motions should be denied because probable cause existed to support the search warrants and the arrests of the Defendants.

**1.      The Affidavit in Support of the Search Warrant Provided Probable Cause for the Issuance of the Search Warrants.**

Defendants challenge the search warrants issued in this case based upon whether they are supported by probable cause on their four corners. Searches conducted pursuant to a warrant are reviewed to determine whether the information in the warrant application and supporting affidavit provided probable cause for the search. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 236). When determining whether probable cause exists, a court does not evaluate each piece of information independently, but, rather, considers all of the facts for their cumulative meaning. *United States v. Allen,* 297 F.3d 790, 794 (8th Cir. 2002). The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004).

In reviewing the decision of the issuing court, this Court must ensure that the issuing court "'had a substantial basis for . . . conclud[ing] that probable cause existed.'" *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238-39.) Since reasonable minds may differ on

whether a particular search warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

The Court concludes that, given the totality of the circumstances described in the affidavit in support of the search warrants, a reasonable person could believe there was a fair probability that evidence of controlled substances would be present at the 5th Avenue residence, the Oakdale Avenue apartment, and Thomas Avenue residence. The affidavit establishes that the 5th Avenue residence was visited by the Defendant Quiroz-Mendieta immediately before or after selling marijuana in controlled buys. Additionally, the 5th Avenue residence appeared to be the home of the Defendant Quiroz-Mendieta. The affidavit establishes that the Oakdale Avenue apartment was rented to a person who provided marijuana to Defendant Quiroz-Mendieta. The affidavit establishes that the Thomas Avenue residence was visited by Defendant Quiroz-Mendieta at a time when it was known that he was picking up a large amount of marijuana. After Defendant Quiroz-Mendieta left the Thomas Avenue residence, he reported that he was now in possession of a large amount of marijuana. All of this information provided probable cause for the issuance of the search warrants, and the version of events recorded in the affidavit has not been refuted by any other evidence in the record.

**2.     The Arrests of the Defendants Are Supported by Probable Cause.**

"Probable cause to arrest exists if the facts and circumstances known to an officer would warrant a person of reasonable caution in believing that the suspect has, is, or will soon, commit an offense." *United States v. McKay*, 431 F.3d 1085, 1090 (8th Cir. 2005). The determination of whether probable cause exists to arrest a person depends on the totality of the circumstances. *Id*. Over a course of many

days, law enforcement witnessed Defendant Quiroz-Mendieta conduct a series of narcotic transactions. After the first controlled buy, officers had probable cause to arrest Defendant Quiroz-Mendieta, as they had probable cause to believe that Defendant Quiroz-Mendieta was engaged in the distribution of narcotics. Defendant Farias-Mendoza was observed traveling with Defendant Quiroz-Mendieta during a period of time when it was know that Defendant Quiroz-Mendieta was picking up a large amount of marijuana. Furthermore, Defendant Farias-Mendoza entered a home with Defendant Quiroz-Mendieta, and after they exited the home, Defendant Quiroz-Mendieta relayed to the CI that he was in possession of the marijuana. In the present case, the facts and circumstances known to the officers would warrant "a person of reasonable caution in believing that [Defendant] has . . . commit[ed] an offense" and that offense was conspiracy to distribute narcotics. *Id*. Therefore, the officers in the present case had probable cause to arrest Defendants, and Defendant was validly arrested once he was apprehended.

**3.   The Searches of the Defendants Are Valid Under the Search Incident to Arrest Exception to the Warrant Requirement.**

Once the Defendants were arrested, they were contemporaneously searched for weapons and contraband. A search incident to arrest is an exception to the general requirement that police possess a search warrant prior to executing a search. *New York v. Belton*, 453 U.S. 454, 457 (1981). Once a defendant is lawfully arrested, a law enforcement officer is empowered to "search . . . the arrestee's person and the area 'within his immediate control.'" *Chimel v. California*, 395 U.S. 752, 763 (1969). If the Defendants are in a vehicle, their area of immediate control includes the entire passenger compartment of the vehicle. *United States v. Orozco-Castillo*, 404 F.3d 1101, 1103 (8th Cir. 2005) (citing *Knowles v. Iowa*, 525 U.S. 113, 117-18 (1998)). The search incident to arrest must take place contemporaneously

with the arrest of the defendant. *United States v. Morales*, 923 F.2d 621, 627 (8th Cir. 1991). Therefore, the search of the Defendants and their vehicles were lawful as a search incident to arrest.

### III.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Quiroz-Mendieta's motion to suppress all evidence obtained from unlawful searches and seizures [#45], Defendant Farias-Mendoza's motion to dismiss count 6 of the indictment [#28], Defendant Farias-Mendoza's motion to suppress physical evidence [#37] and Defendant Farias-Mendoza's motion to suppress evidence obtained as a result of search and seizure [#38] be **DENIED**.

DATED: August 15, 2007　　　　　　　　　　　　　s/ Franklin L. Noel
　　　　　　　　　　　　　　　　　　　　　　　　FRANKLIN L. NOEL
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 29, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **August 29, 2007**, a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.